**McDONALD & COMPANY, a Partnership, et al., Appellants,**

v.

**M. L. LACY, Appellee.**

No. 15539.

Court of Civil Appeals of Texas.

Fort Worth.

Sept. 10, 1954.

Scott McDonald and Toy Crocker, Fort Worth, for appellants.

Joseph F. Greathouse, Fort Worth, for appellee.

RENFRO, Justice.

Suit was brought by M. L. Lacy, appellee, against Durward McDonald, Sr., Durward McDonald, Jr., and Scott McDonald, a partnership, doing business under the name of McDonald & Company, hereinafter called appellants, and R. Guy Fry. It was alleged by appellee that on the 10th day of April, 1953, he entered into an oral agreement with Fry, agent for McDonald & Company, providing that whichever party sold the Gray farm south of Arlington, Texas, the commission would be split one-third each to appellee, appellants and Fry; that prior to the above date McDonald, Sr., managing partner of appellants, had agreed with appellee that they would work jointly with him in selling real estate and would split commissions. It was further alleged that appellee knew of a valuable farm for sale and he agreed with Fry that he would take him to the owner of the farm, provided the commission was split as indicated above, if they were able to secure listing of the Gray farm and procure a buyer therefor. The farm was later sold by McDonald & Company through Fry.

Appellants and Fry entered a general denial and specially denied making such contract as alleged by appellee. The jury found that Fry did enter into a contract with Lacy, providing that Lacy would receive one-third of the commission received from the sale of the property in question, and in answer to issue No. 2, found that Fry was authorized by appellants to enter into the contract.

Based upon the verdict, judgment was accordingly entered for appellee for the sum of $1,052.29, the stipulated amount of one-third of the commission received by appellants and Fry.

Fry has not appealed.

In their pleadings appellants denied Fry made the contract alleged by appellee, but did not challenge his authority to do so. On appeal they do not challenge the finding that Fry made the contract as found by the jury, but insist there was no evidence that Fry was authorized by appellants to make such contract, and further that the evidence is at variance with the pleadings.

The evidence, and inferences to be reasonably drawn therefrom, viewed in the light most favorable to the verdict and judgment, may be briefly summarized as follows: Appellants maintained an office in Arlington with their sign over the entrance and with Fry in sole charge. Fry, appellants and appellee are all licensed real estate brokers. Appellants' main office is located in Fort Worth. A short time prior to the contract in question, appellee and Fry had dealt on a split commission basis with approval of appellants. Shortly before April 10th, McDonald, Sr., told appellee that if he and Fry made any deals the commission would be split, regardless of who made the sale.

Appellee learned the Gray farm was for sale and without disclosing to Fry who owned it or where it was located, procured Fry's agreement that if a listing could be secured in the name of McDonald & Company and a buyer was secured, the commission would be split one-third to appellee, one-third to appellants, and one-third to Fry, regardless of who made the sale. Thereupon, appellee took Fry to the farm where he talked to the owner. At that time another agent had exclusive listing of the property, but a few days after that listing expired the owner came to Fry and listed the farm for sale. Thereupon, Fry and appellee conversed two or three times daily for several days, appellee agreeing to advertise and solicit purchasers in Dallas County and Fry agreeing to advertise and solicit buyers in Tarrant County. Appellee did advertise in daily papers in Dallas and showed the farm to prospective buyers.

Fry later perfected a sale of the property, signing the contract in the name of McDonald & Company, by himself as associate.

Fry testified he promised a commission to appellee only in the event appellee procured a purchaser. McDonald, Sr., testified he merely told appellee prior to April 10th that he hoped their dealings would be pleasant and profitable. It was within the jury's province to accept appellee's version.

■ Ordinarily, it is not within the power of an agent to bind his principal by the evidence which he alone puts forward as to his agency. The principal may, however, agree to be bound by whatever the agent may assume. So, in the instant case, according to appellee, McDonald, Sr., told him in effect in the presence of Fry that whatever deals he made with Fry would be satisfactory to appellants, and that appellants would cooperate with him on any deals he made with Fry. Appellee does not rely solely on what Fry told him but on the statements made to him by the senior partner of appellants. And in addition to appellee's previous experience of splitting commissions with appellants, there was evidence that commissions had been split with other dealers in Arlington by appellants. Moreover, it is undisputed that at the time of the contract Fry was in sole charge of appellants' office in Arlington, acting as a real estate broker. This could be considered in connection with appellants' promise to cooperate with any deal made with Fry. It is clear from the record that Fry had authority to contract to split commissions fifty-fifty with brokers who furnished a buyer or a listing. Since he had authority to contract for a fifty per cent split, it necessarily follows, in our opinion, that he had authority from McDonald & Company to agree to a lesser payment to appellee, namely, one-third of commission.

■ Appellants' contention that Fry could only contract to split a commission when the cooperating broker furnished a buyer or a listing, and that appellee did neither in this instance, ignores the evidence of appellee that he, in fact, was the one who secured the listing for McDonald & Company of the Gray farm. His testimony is corroborated in part by Fry, himself, in that Fry testified he knew nothing of Gray or the Gray farm until appellee approached him about trying to obtain a listing of the farm. The record bears out appellee's testimony that it was agreed to list the farm in the name of McDonald & Company, because of their prestige and ability to advertise. He was positive in his testimony that his agreement with Fry was that whichever party sold the property the commission would be split as aforesaid. Bearing in

mind the statement of McDonald, Sr., the evidence of similar transactions between the same parties, the fact that Fry was in sole charge of the Arlington office of appellants, and that the transaction was within the apparent scope of Fry's authority, we are led to the conclusion that the evidence is sufficient to uphold the finding of the jury that Fry was authorized by appellants to make the contract with appellee.

Finding that the verdict and judgment are supported by the pleadings and the evidence, the appellants' points of error are overruled and the judgment of the trial court affirmed.

Judgment affirmed.